REMLEY & SWISHER v. JOHNSON COUNTY SAVINGS BANK.

1. **Attorney's Fees:** RECOVERY OF: CONTRACT. Where the attorneys foreclosing a mortgage, which provided for reasonable attorney's fees, agreed with the mortgagor that they would charge only one hundred dollars for their services in the case, but an attorney's fee of several hundred dollars was taxed as costs in the case with the mortgagor's consent, and by his procurement, it was held that he could not recover the excess above one hundred dollars from the mortgagee, who purchased the property under the foreclosure for the amount of the judgment and costs.

*Appeal from Johnson District Court.*

TUESDAY, DECEMBER 9.

THE defendant, being the owner of a certain mortgage upon real estate, foreclosed the same by a suit against Wm. Crum,

the maker thereof. The amount of the judgment and costs was about $13,000. The notes which the mortgage was given to secure, also the mortgage, provided that in case of foreclosure a reasonable attorney's fee should be taxed as costs. The decree of foreclosure was taken upon a default, and the sum of $621.59 was taxed as an attorney's fee, and as part of the costs. A special execution was issued and the mortgaged property was sold. Part of it was purchased by a third party. and the remainder by the defendant herein. The amount bid by the defendant equaled the balance due upon the judgment, interest and costs. A certificate of purchase was taken by the purchasers at the sale, and afterwards, at the proper time, sheriff's deeds were duly executed and delivered to them.

The plaintiffs, as assignees of Crum, brought this action to recover of the defendant the sum of $524.74, and averred that Finch & Lucas, the attorneys who foreclosed the mortgage, entered into an agreement in writing with said Crum that they, as attorneys, would foreclose the mortgage for a fee of $100, no matter how much the court might assess as attorney's fees. The alleged consideration for the agreement in writing was that said Crum should interpose no defense to the foreclosure of the mortgage. Plaintiffs claimed judgment for the amount of the attorney's fee, less the sum of $100 as stipulated in said written agreement.

The answer and amended answer denied any liability, and averred that said written contract was procured by fraud, and was without consideration, and was in other respects invalid. A jury was waived, and there was a trial by the court. There was judgment for the defendant for costs. Plaintiffs appeal.

*Boal & Jackson* and *Remley & Swisher*, for appellants.

*Robinson & Patterson*, for appellee.

ROTHROCK, J. The written agreement upon which the plaintiffs ground their recovery is in these words:

1. ATTORNEY'S
fees: recovery
of: contract. "It is understood between the undersigned that Finch & Lucas will foreclose mortgage of Johnson County Savings Bank against Wm. Crum, now in their

hands, and attend to the business of said foreclosure and sale of property for the sum of $100, no matter how much the court will assess as attorney's fees in the case.

FINCH & LUCAS,

*December 28, 1878.*                     WILLIAM CRUM.

There was a demurrer to the answer. Afterwards the answer was amended, and no ruling was made upon the demurrer until the cause was finally determined. The court did not make a finding of facts, but found generally for the defendant. We are therefore required to determine whether the judgment of the court below can be sustained upon the evidence, applying to it the same rule which is applicable to the verdict of a jury, and which we need not here repeat. We need not discuss the assignment of error as to the alleged erroneous admission of evidence, because we think the cause must be determined upon other grounds.

It will be seen, by an examination of the above written agreement, that it was not stipulated that $100 attorney's fee, and no more, should be taxed by the court. Indeed, it may be said that the agreement contemplated that a greater amount should be taxed. The evidence shows, beyond question, that Crum desired that from $600 to $1,000 should be taxed. The action to foreclose the mortgage had been commenced before the agreement was made. It does not appear that Crum had any defense thereto. On the contrary the action was commenced at his instance. Finch & Lucas were the attorneys of record, and were legally entitled to reasonable attorney's fees for their services, and if the contract had provided that no more than $100 should be taxed the court would have refused to tax more, because of the stipulation with the defendant as to the fees, and that would have been an end of the question.

But this was not the contract. Crum made no objection to the taxing of $621, but was in fact a party to it. He, or his assignees, who have no greater rights under the contract than he would have if this action were in his name, occupy this position: He procured a judgment to be rendered against him for $521 more than was due, and without seeking to set the

judgment aside, to that extent, he is in this action endeavoring
to recover it back upon the ground that the defendant bought
the property at sheriff's sale for an amount sufficient to include
the excess, and upon the alleged ground that the defendant,
by agreement, took judgment for more than was due, and
promised that he should have the excess of attorney's fees
over $100.   Now we think the court below, if it founded its
judgment upon that ground, was justified from the evidence
in finding that this contract was procured by fraudulent rep-
resentations.    S. M. Finch, one of the attorneys, testified that
Crum "said he wanted a good big fee assessed there, but
didn't want me to charge him more than $100.   I told him I
could not do it for that, but finally I told him that I would
have $100 assessed and that would be all I would charge him.
In the mean time he had a conversation with Robert Lucas,
and Robert came in and said that Mr. Crum was a neighbor
of theirs, and I finally consented that we might do it for $100.
He, however, wanted a fee of $600 or $1,000 assessed, and I
refused to do that.   Well, he said, the bank would bear him
out in that, and make an arrangement so that they would pay
that money back.   I told him that was something I could not
make an agreement with him about; that I could not bind
the bank by such an agreement; that if they made it I was
satisfied, but didn't want to know anything about it, and
didn't want to have, and wouldn't have, anything to do with
it.   He went out and came back in about an hour, and said
he had arranged the matter with the bank; that I was to have
a fee of several hundred dollars assessed, and the bank was to
pay him any surplus over the amount that I charged him;
that "they were to go and sell the land and make their money
out of it first, and if there is anything over they have agreed
to pay it to me, including anything in the attorney's fees more
than you charge."   I said: "Now you understand you are not
to expect anything from the bank until they get all their
money out of this thing, in money."   He said: "Yes, that
was the understanding."   I told him that there might be a
sale of land or something of that kind, that might put them
in bad shape."

There is a conflict in the evidence as to whether the officers of the bank knew of any such arrangement, and the court may have fairly found that no such arrangement was ever made, and that the bank knew nothing of the claim now made, until long after the sheriff's sale. Crum had notice that Finch & Lucas had no authority to take a judgment for more than was actually due, and thus embarrass the bank, by compelling it to buy the real estate for more than was due, pay Crum the excess, and await the sale of the property for reimbursement.

In conclusion we may say that we are not prepared to sanction contracts of this character. Its purpose is evident from the fact that a judgment creditor of Crum intervened in this action, claiming that he was entitled to any surplus after satisfaction of the defendant's mortgage, by virtue of a judgment lien upon the property for a large amount, and which judgment was recovered before the contract was made.

AFFIRMED.